UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JAMIE F. DE JESUS,

    Plaintiff,

  v.              Case No. 12-CV-0306

DAX C. ODOM, DAVID A. CLARKE, JR.,
NANCY EVANS, MARY COOK,
DARLENE JONES-GRAHAM,
WILLIAM DUKERT, and GREGORY BACON,

    Defendants.

DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR CLARIFICATION (DOC. 10), GRANTING IN PART AND DENYING IN PART PLAINTIFF'S REQUEST THAT THE COURT RETURN EXHIBITS (DOC. 10), DENYING AS MOOT PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO FILE AMENDED COMPLAINT (DOC. 10), DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO APPOINT COUNSEL (DOC. 10), AND SCREENING PLAINTIFF'S AMENDED COMPLAINT

  This matter comes before the court on plaintiff's motions and for screening of plaintiff's amended complaint. *See* 28 U.S.C. § 1915A.

  To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon him by a person or persons acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's pro se allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Plaintiff indicates that he spent eighteen months compiling his original complaint and exhibits, but all he needed to do was tell the story of what happened to him. Instead, he spent too much time writing how he thought lawyers would write.

In the June 19, 2012, order, the court admonished plaintiff to be as brief as possible. Nevertheless, his amended complaint is still thirty-eight pages, most of which are superfluous. Even so, the amended complaint seems to contain all of plaintiff's allegations regarding each of the defendants and will be screened.

COMPLAINT AVERMENTS

On April 1, 2010, while plaintiff was a pretrial detainee in the custody of the Milwaukee County Sheriff's Office, defendant Assistant District Attorney Dax C. Odom called the Milwaukee County Correctional Facility - South and asked defendant Mary Cook to place plaintiff on an "incommunicado/maximum security restriction," or "11 status." (Amended Complaint at 5-6). This "11 status" rescinded all of plaintiff's communications, incoming and outgoing. *Id.* Odom made this personal request due to possible forthcoming criminal charges against plaintiff for intimidation. The same day, Cook and two of her subordinates arrived at plaintiff's housing unit, handcuffed him, and then escorted him to a segregation unit. Cook told plaintiff that she was just complying with the request made by the assistant district attorney.

Plaintiff was held in the segregation unit until April 9, 2010, when Captain Anderson arrived on the unit and placed plaintiff on a transfer list. Captain Anderson told plaintiff she had been totally unaware of the situation. Plaintiff was returned to general population housing unit and received all communications and rights afforded to other pretrial detainees.

2

During his time in the segregation unit, plaintiff was strip searched, given a pink jump suit to wear, and was not given a mattress until approximately 7:00 p.m. On April 3, 2010, defendant Captain Darlene Jones-Graham denied a personal visit from plaintiff's mother. Plaintiff was informed on April 5, 2010, that he would have phone calls, incoming or outgoing mail, or visits. However, he was able to place a call to his attorney on April 6, 2010. After that, plaintiff was told he would receive legal mail only and that his visits would be reinstated. On April 7, 2010, Lt. Torres relayed the following message: "A.D.A. Odom was going to call your attorney today, planned to see the judge on Friday 4/09/10, expects order revoking your privileges to be signed then, you are committing a crime and be expecting criminal charges for intimidation of a victim." (Complaint at 31). Plaintiff received legal correspondence on April 7, but was informed that a letter from his mother was being denied delivery.

Between April 9 and April 20, after being returned to the general population, plaintiff filed numerous grievances regarding his earlier stay in segregation. His attorney had to wait for seventy minutes to see him on April 20, 2010. Ultimately, the attorney could not wait any longer and therefore left plaintiff a copy of the document defendant Odom intended to submit at the April 22, 2010, bail hearing. Plaintiff was not allowed to attend the April 22, 2010, bail hearing because defendant Odom had not prepared an order to produce. At the hearing, defendant Odom made a proffer of evidence and requested a court order rescinding plaintiff's incoming and outgoing communication privileges with the exception of attorney contact. An order rescinding plaintiff's communications was entered by the court.

When plaintiff learned he would not be attending his bail hearing, he made a disturbance and was placed in segregation temporarily. However, when plaintiff was ready

3

to return, the order arrived. Plaintiff had a mental breakdown or panic attack and remained in segregation. Although plaintiff was told he would not receive a rules violation for his actions during his mental breakdown, defendant Gregory Bacon approved a citation for four rules violations stemming from the incident. Plaintiff was found guilty during a disciplinary hearing conducted by intercom on April 27, 2010. He was sanctioned with twenty-five days of "food curtailment," during which he received only nutriloaf and bread. Plaintiff remained in segregation until June 1, 2010, when he signed a guilty plea in his underlying case just to be let out of segregation and to be able to communicate with his family. On June 1, plaintiff was reclassified as general population and his communication privileges were restored. Between April 22 and June 1, plaintiff wrote many grievances and letters regarding his situation.

Plaintiff also submits that unspecified defendants and other Milwaukee County Sheriff's Office staff retaliated against him between June 14, 2010, and September 4, 2010. He addressed numerous grievances in a July 29, 2010, letter and met with defendant Evans on August 20, 2010, regarding his many complaints. During that meeting, Evans told plaintiff that the institution's staff did nothing wrong in honoring defendant Odom's request that plaintiff be placed on incommunicado status pending an investigation.

Plaintiff asserts the following claims: (1) denial of due process and equal protection claims under the Fifth and Fourteenth Amendments; (2) unlawful seizure or false imprisonment in violation of the Fourth Amendment; (3) violation of the Eighth And Fourteenth Amendments regarding the conditions of confinement he endured; (4) intentional infliction of emotional damage contrary to Wisconsin law; (5) retaliation contrary to the First Amendment; (6) denial of due process and equal protections under the Fifth and

4

Fourteenth Amendments for false arrest and malicious prosecution; (7) Sixth and Fourteenth Amendment violations for failure to provide an administrative remedy for his grievances; and (8) "outlawry," respecting the conspiracy with Odom as the sole ringleader and the remaining defendants who implemented a non-existent court order. As a result, plaintiff requests injunctive relief, compensatory and punitive damages, as well as payment for future healthcare and mental health care.

## DISCUSSION

As a pretrial detainee, the Due Process Clause of the Fourteenth Amendment governs plaintiff's claims. *Grieveson v. Anderson*, 538 F.3d 763, 771-72 (7th Cir. 2008). Because pretrial detainees have not received a formal adjudication of the charges against them, they are beyond the power of the state to punish. *Bell v. Wolfish*, 441 U.S. 520, 523 (1979). Also, only a defendant who is personally responsible for depriving the plaintiff of a constitutional right may be held liable under § 1983. *Grieveson*, 538 F.3d at 778. Thus, the court evaluates plaintiff's claims by discussing the actions of each defendant and construing the complaint liberally.

A.   Dax C. Odom, Assistant District Attorney

Defendant Odom asked to have plaintiff put on "11 status" without a court order, failed to prepare a proposed order to produce plaintiff for his April 22, 2010, bail hearing and attempted to get the judge to sign and backdate an order authorizing "11 status" to the day Odom called the jail. Plaintiff filed a complaint against Odom with Wisconsin's Office of Lawyer Regulation (OLR), but OLR concluded that there was not a sufficient basis to proceed.

5

Where a prosecutor acts in a quasi-judicial capacity, he is entitled to absolute immunity for damages. *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993). However, when the prosecutor's conduct is administrative or investigatory, he is entitled only to qualified immunity. *Id.* It is possible that some of Odom's actions with regard to plaintiff were administrative or investigatory. Thus, it is appropriate to apply prosecutorial immunity to Odom at this stage of the litigation. Therefore, plaintiff may proceed on Fourteenth Amendment claims against Odom regarding his request to have plaintiff placed on "11 status" without a hearing on April 1, 2010, and his actions (or inaction) that resulted in plaintiff not being present at the bail hearing on April 22, 2010.

B.Mary Cook, Lieutenant

According to the complaint, defendant Cook facilitated plaintiff's transfer to the segregation unit on April 1, 2010, in compliance with Odom's request. Moreover, she told the plaintiff on April 6, 2010, that she had not received paperwork from the court regarding his status and that the assistant district attorney (Odom) only had seventy-two hours to get the paperwork after making a request.

Based on these allegations, plaintiff may proceed on a Fourteenth Amendment claim against Cook regarding her placement of plaintiff in segregation without a court order or due process and her failure to remove him from segregation after a grace period to secure a court order had expired.

C.David A. Clarke, Jr., Sheriff

The complaint contains no allegations of personal involvement by defendant Clarke. *See Grieveson*, 538 F.3d at 778. Consequently, it fails to set forth any basis to proceed against defendant Clarke.

6

Case 2:12-cv-00306-CNC   Filed 09/12/12   Page 6 of 14   Document 13

D.   Nancy Evans, Major

Plaintiff contends that he sent defendant Evans a letter of complaint on April 19, 2010, after his initial release from segregation. After receipt of the letter, there was nothing Evans could do to impact any constitutional violation plaintiff had suffered while in segregation. Moreover, there are no contentions that she was personally involved in any matters affecting plaintiff's rights. *See id.* Hence, there is nothing in the complaint which provides a basis to proceed against Evans.

E.   Darlene Jones-Graham, Captain

It is asserted that defendant Jones-Graham denied plaintiff a visit from his mother on April 3, 2010, and stated that he would get a make-up visit. In addition, the complaint charges that Jones-Graham told plaintiff that his paperwork was lost, but retracted it on April 7, 2010, and said the paperwork had not arrived. Jones-Graham is said to have authored a memo to plaintiff dated May 24, 2010, advising that employees of the Sheriff's Office acted in "good faith" when they placed plaintiff in segregation on April 1 and held him there with no court order. Viewing these assertions in a light favorable to the plaintiff do not suggest that Jones-Graham violated plaintiff's constitutional rights, and as such do not entitle him to proceed against this defendant.

F.   William Dukert, Captain

Plaintiff spoke to defendant Dukert after his release from segregation on April 9, and his bail hearing on April 22 regarding general guidelines for "11 status." Like plaintiff's communication with Evans on April 19, this discussion with Dukert followed plaintiff's release from segregation. Moreover, the complaint does not indicate that Dukert was

7

personally involved with plaintiff in any matter that could be construed as a constitutional deprivation that plaintiff may pursue in this action. *See Grieveson*, 538 F.3d at 778.

G.   Gregory Bacon, Lieutenant

Next, the complaint asserts that defendant Bacon approved a citation against plaintiff for four rule violations stemming from plaintiff's April 22 mental breakdown. The allegations suggest that approval of the citation was in retaliation for earlier grievances plaintiff filed against Bacon's coworkers. However, Bacon's involvement in the rules violation report is not described. Moreover, the complaint does not indicate that Bacon was the officer who prepared or signed the report. Further, the complaint does not assert that he was the hearing officer who sustained the violations and sanctioned plaintiff by imposing disciplinary confinement.

Nevertheless, a prisoner's retaliation claim is subject to a liberal notice pleading standard. To comply with 1915A, as with Fed. R. Civ. P. 12(b)(6), the complaint need specify the bare minimum facts necessary to notify defendant and the court of the nature of the claims. *See Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). In cases involving retaliation claims, the "bare minimum" requires the assertion of facts that would apprise defendant of what plaintiff did to provoke the alleged retaliation and what defendant did in response. *Id.* at 439; *Walker v. Thompson*, 288 F.3d 1005, 1012 (7th Cir. 2002) ("a plaintiff alleging retaliation must reference, at a minimum, the suit or grievance spawning the retaliation and the acts constituting the retaliatory conduct"). In this case, plaintiff will be allowed to proceed on a First Amendment claim against Bacon that whatever he did in relation to the rules violation report was in retaliation for the numerous grievances plaintiff filed between April 9 and April 20. However, to the extent that plaintiff challenges the

8

process he received, i.e., the hearing by intercom, he has not named any defendants who may have been involved personally. *See Grieveson*, 538 F.3d at 778.

H. Additional Matters

The remainder of plaintiff's claims will be dismissed

First, the complaint indicated that plaintiff also wanted to proceed against each defendant in his or her official capacity. "A municipality may be liable for harm to persons incarcerated under its authority if it maintains a policy that sanctions the maintenance of prison conditions and infringes the constitutional rights of the prisoners. Municipal liability under § 1983 is appropriate only when the policy in question is the direct cause or moving force behind a constitutional violation." *Hunter v. Amin*, 583 F.3d 486 (7th Cir. 2009) (internal citations and quotations omitted).

Here, the complaint reveals that there is no custom or policy that authorized plaintiff's transfer to "11 status" without a court order. The allegations are that defendant Odom made the decision that led to plaintiff's "11 status." No custom or practice of Milwaukee County or some other governmental body is described.

If the conditions of plaintiff's confinement in the segregation unit of the Milwaukee County Jail constituted punishment, the decision to place him in segregation may have violated plaintiff's due process rights, as discussed above. However, the conditions described by plaintiff were not "sufficiently serious" that the acts or omissions of prison officials giving rise to those conditions deprived him of a "minimal civilized measure of life's necessities." *Rice ex rel. Rice v. Correctional Medical Services*, 675 F.3d 650, 664-65 (7th Cir. 2012). Therefore, plaintiff may not proceed on a claim regarding his conditions of confinement in the segregation unit.

9

The Fourth Amendment's prohibition of unreasonable seizures does not apply to the transfer of a pretrial detainee from general population to the segregation unit. Consequently, allegations regarding plaintiff's removal from the jail's general population to segregation are not actionable under the Fourth Amendment

Additionally, the Court of Appeals for the Seventh Circuit has made it clear that malicious prosecution is not a constitutional tort unless the state does not provide any remedy for malicious prosecution, *Newsome v. McCabe*, 256 F.3d 747, 750 (7th Cir. 2001) ("the existence of a tort claim under state law knocks out any constitutional theory of malicious prosecution"), and the State of Wisconsin recognizes the tort of malicious prosecution. *See Strid v. Converse*, 111 Wis.2d 418, 331 N.W.2d 350 (Ct.App.1994). Thus, plaintiff may not proceed on a malicious prosecution claim.

Plaintiff has failed to state a state law claim for intentional infliction of emotional damage. A claim for intentional infliction of emotional distress is stated by pleading (1) defendant intended to cause plaintiff emotional distress by his conduct; (2) the conduct was extreme and outrageous; (3) the conduct was a cause-in-fact of plaintiff's emotional distress; and (4) plaintiff suffered an extreme disabling response to the defendant's conduct. *Anderson v. Continental Ins. Co.*, 85 Wis.2d 675, 694-95 (1978). The actions described in the pending complaint are not extreme or outrageous behavior and therefore, are not actionable.

Finally, the complaint seeks to proceed on a claim of outlawry. However, there is no such thing as "outlawry." It appears that relevant assertions are an attempt to bring a conspiracy claim.

10

In *Twombly*, the Supreme Court affirmed the dismissal of a complaint alleging "certain parallel conduct . . . absent some factual context suggesting agreement, as distinct from identical, independent action." 550 U.S. at 548. The Court stated that "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice." *Id.* at 556. Subsequently, the Seventh Circuit confirmed that a claim should be dismissed when a complaint "is bereft of any suggestion, beyond a bare conclusion, that the . . . defendants were leagued in a conspiracy." *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009). All that plaintiff has is his conclusion.

PLAINTIFF'S MOTIONS

Prior to receipt of the amended complaint, the court received plaintiff's letter containing several requests that were docketed as motions. First, plaintiff asks whether he needs to submit additional exhibits at this time or whether the need for exhibits occurs during the discovery process. He also asks if he will need to submit another affidavit alleging these violations and raises questions about the content of his amended complaint. However, the amended complaint speaks for itself and has been screened. He may have to provide defendants with documents in response to discovery or file an affidavit with evidence in opposition to a motion for summary judgment, but plaintiff need not serve defendants with exhibits or affidavits at this time.

Second, plaintiff asks the court to return his voluminous exhibits, citing his *in forma pauperis* status. Plaintiff will not have to provide a copy of the exhibits for each defendant in discovery and the court will not return to plaintiff all of the documents he submitted. However, if the need arises, the court will return to plaintiff one set of the exhibits.

11

Third, plaintiff asks the court to appoint counsel. Civil litigants do not have a constitutional or statutory right to appointed counsel, but the court has the discretion to request attorneys to represent indigents in appropriate cases pursuant to 28 U.S.C. § 1915(e)(1). *Pruitt v. Mote*, 503 F.3d 647, 653 (7th Cir. 2007); *Luttrell v. Nickel*, 129 F.3d 933, 936 (7th Cir. 1997) (citing *Zarnes v. Rhodes*, 64 F.3d 285, 288 (7th Cir. 1995)). Plaintiff has satisfied the threshold matter of showing he made a reasonable attempt to secure private counsel on his own. *See Pruitt*, 503 F.3d at 654; *Zarnes*, 64 F.3d at 288. Thus, the court must consider whether he appears competent to litigate his case and, if not, whether the presence of counsel would likely make a difference in the outcome of the case. *Pruitt*, 503 F.3d at 654-655 (citing *Farmer v. Haas*, 990 F.2d 319, 322 (7th Cir. 1993)). If anything, plaintiff has provided the court with too much information regarding his claims against defendants. Although he was directed to amend his complaint and the amended complaint still has too much detail, plaintiff has conveyed his claims to the court competently.

Fourth, plaintiff asked for an extension of time to submit his amended complaint, but he filed his amended complaint before the deadline. Therefore,

IT IS ORDERED that plaintiff's motion for clarification (Doc. 10) is DENIED.

IT IS FURTHER ORDERED that plaintiff's request that the court return the exhibits plaintiff submitted with the copies of his original complaint (Doc. 10) is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that plaintiff's motion to appoint counsel (Doc. 10) is DENIED WITHOUT PREJUDICE.

12

IT IS FURTHER ORDERED that plaintiff's motion for extension of time to file amended complaint (Doc. 10) is DENIED as moot.

IT IS FURTHER ORDERED that the following defendants are DISMISSED as parties to this action: David A. Clarke, Jr., Nancy Evans, Darlene Jones-Graham, and William Dukert.

IT IS FURTHER ORDERED that the United States Marshal shall serve a copy of the complaint, the summons, and this order upon the following defendants pursuant to Federal Rule of Civil Procedure 4: Dax C. Odom, Mary Cook, and Gregory Bacon. The plaintiff is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. § 1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). Although Congress requires the court to order service by the U.S. Marshals Service precisely because in forma pauperis plaintiffs are indigent, it has not made any provision for these fees to be waived either by the court or by the U.S. Marshals Service.

IT IS ALSO ORDERED that defendants Odom, Cook, and Bacon shall file a responsive pleading to the complaint.

IT IS FURTHER ORDERED that the plaintiff shall submit all correspondence and legal material to:

> Honorable C. N. Clevert, Jr.
> % Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Plaintiff is notified that from now on, he is required under Federal Rule of Civil Procedure 5(a) to send a copy of every paper or document filed with the court to the opposing party or, if the opposing party is represented by counsel, to counsel for that party. Fed. R. Civ. P. 5(b). Plaintiff should also retain a personal copy of each document. If the plaintiff does not have access to a photocopy machine, he may send out identical handwritten or typed copies of any documents. The court may disregard any papers or documents which do not indicate that a copy has been sent to the opposing party or that party's attorney, if the party is represented by an attorney.

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 12th day of September, 2012.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
Chief U.S. District Judge