# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JAMIE F. DE JESUS,

      **Plaintiff,**

      v.                                                                                     Case No. 12-CV-306

DAX C. ODOM,
MARY COOK, and
GREGORY BACON,

      **Defendants.**

## DECISION AND ORDER

The plaintiff, Jamie F. DeJesus, is proceeding pro se on Fourteenth Amendment due process claims against Dax Odom and Mary Cook and a First Amendment retaliation claim against Gregory Bacon. This matter is now before the court on motions for summary judgment filed by all the parties, and a motion by the plaintiff to stay proceedings in this case subsequent to the court's decision on summary judgment.

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under federal statutes. The case was assigned to the court according to the random assignment of civil cases pursuant to 28 U.S.C. §636(b)(1)(B) and General Local Rule 72 (E.D. Wis.), and the plaintiff has consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73 (E.D. Wis.).

1. **Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

2. **Background**

These facts are taken from the submissions of the parties, to the extent they are supported by admissible evidence. Disputes of fact will be noted.

On March 15, 2010, the plaintiff, Jamie F. De Jesus, was detained at the Milwaukee County Jail and made his first appearance on charges of battery, false imprisonment, and disorderly conduct

for domestic abuse against his ex-girlfriend (Michelle A.). At the initial appearance on March 16, 2010, the court set bail and ordered that the plaintiff have no contact with Michelle A. as a condition of his release. But the plaintiff did not post bail and was not released. He remained in the custody of the Milwaukee County Sheriff's Department as a pretrial detainee at the Milwaukee County Correctional Facility - South (MCCF-S).

Defendant Mary Cook is a Lieutenant with the Milwaukee County Sheriff's Office at the MCCF-S. Defendant Gregory Bacon is a Captain with the Milwaukee County Sheriff's Office; he was a Lieutenant at the times relevant to this case.

At the plaintiff's arraignment on March 24, 2010, Michelle A appeared uncooperative and informed defendant Dax Odom, an Assistant District Attorney with the Milwaukee County District Attorney's office, that she would not attend any further hearings. De Jesus's mother was present at the hearing and appeared friendly with Michelle A. Based on his experience in the Domestic Violence Unit, defendant Odom became concerned that the plaintiff might be intimidating Michelle A (the victim in his case) by telephone. Odom asked the Witness Protection Unit of the Milwaukee County District Attorney's Officer (WITSEC) to monitor calls made by the plaintiff from the jail.

On March 30, 2010, Odom received an e-mail from a WITSEC program analyst. The e-mail describes a telephone call between the plaintiff and his sister where the sister simultaneously was on another telephone with Michelle A. The plaintiff tells Michelle A., through his sister, that she does not have to go to court and that "they're just trying to scare her into taking the stand." (Affidavit of Dax Odom, ¶7, Exhibits B-C). The e-mail also describes a telephone call in which the plaintiff tells his mother to tell Michelle A. "to go to the D.A. and recant her statement," and the mother agrees to tell her. Id.

3

Additionally, Michelle A. visited the plaintiff at the MCCF-S on March 27, 2010. According to the plaintiff, he and Michelle A. were working on a reconciliation and trying to save their family.

Odom contacted Peter Arnold, the plaintiff's attorney in his criminal case, and informed him that, on the basis of the telephone calls, the State would move to rescind the jail telephone, visitation, and mail privileges of the plaintiff, other than communications with this attorney. Odom told Arnold that a motion hearing would have to be scheduled as soon as possible, but Arnold informed Odom that he would not be available until April 19, 2010.

After receiving the information from WITSEC, Odom communicated his concerns to Cook on April 1, 2010, that the plaintiff was using the jail phone or visit to intimidate a victim witness. There is a dispute of fact over who initiated the call, even though Cook also believes it was Odom who called her. Odom avers that he made it clear that he was simply informing the Sheriff's Department of the potential criminal activity taking place within the jail, that there was no court order in place restricting the plaintiff's communication privileges, that a court order would be sought, and that criminal charges were also begin considered. Odom avers that he also made it clear that the District Attorney's office had no authority to order the Sheriff's Department to take any action. According to Odom, he never made any request that the Sheriff's Department take any particular action with respect to the plaintiff, especially including any request that the plaintiff be placed on "an incommunicado/maximum security restriction (11) status rescinding all communications incoming and outgoing." (Amended Complaint at 5-6, ECF 11).

Captain Susan Anderson, who is now retired, made the decision to transfer the plaintiff pending receipt of a court order. Odom was aware that the plaintiff's jail telephone, mail, and visitation privileges had been restricted. Defendant Cook and two of her colleagues physically

4

transferred the plaintiff to dorm R6 on April 1, 2010.  The plaintiff disputes that Captain Anderson knew about his transfer on April 1, 2010, because he believes she found out on April 9, 2010, that he was being held in R6 without a court order.

In addition to inmates on (11) status, R6 was used for discipline of inmate who received rules violations while housed at MCCF-S.  R6 is a segregation unit that is used for classification purposes for inmates outside of the general population.  The defendants describe R6 as a large, open dormitory style housing unit with thirty bunk beds and sixty inmates.  A dayroom is located within R6 that is an area where inmates can watch television or play table games throughout the day.  R6 is also an area where inmate telephone communications can be restricted to prevent third party contact.  To place a phone call, the inmate must be escorted off the unit to the visiting area phone where the visiting officer dials the number and verifies the identity of the recipient.

The plaintiff avers that during his time in R6 from April 1, 2010, through April 9, 2010, that there was not any use of the television, and absolutely no access to telephones by any inmates, though the plaintiff was able to communicate with his lawyer while he was housed in R6.  In R6, inmates were ordered to wear pink one piece jump suits.  They were required to turn in their mattresses at 7:00 a.m. and would not receive them back until 7:00 p.m.

The Milwaukee County Sheriff's Office viewed the concerns about the plaintiff as a case-specific security issue, not a disciplinary matter.  An officer of the court informed the Milwaukee County Sheriff's Office that a detainee was using the phones to intimidate a witness and commit further crimes.  Given those concerns, the Milwaukee County Sheriff's Office relocated the plaintiff to a dormitory where his telephone usage could be immediately monitored pending receipt of the

court order.  The plaintiff avers that he was told throughout his pretrial detention that he was an (11) status and pending (11) status.

Captain Anderson avers that she learned on April 9, 2010, that no court order had yet arrived and then had plaintiff transferred out of R6 to a non-restrictive unit.  Between April 9, 2010, and April 20, 2010, the plaintiff filed a number of grievances regarding his time in segregation, his lack of communication, missing visits, and false imprisonment.  (Amended Complaint at 7, ECF 11).

A hearing on the State's motion to rescind the plaintiff's jail telephone, visitation, and mail privileges, other than communications with his attorney, was held on April 22, 2010.  The plaintiff's attorney noted that the plaintiff had not been produced for the hearing, but he did not request that the plaintiff be produced or that the hearing be postponed until the plaintiff could be produced.  No law or rule imposed any duty on an assistant district attorney to have a pretrial detainee produced for a court hearing.  At the conclusion of the hearing, the judge signed the proposed order Odom had prepared, rescinding the jail telephone, visitation, and mail privileges of the plaintiff, other than communications with his attorney.  The judge noted that the date on the proposed order contained the wrong year (2008) and changed the year to the correct year (2010).

On April 22, 2010, Corrections Officer Gensler was the officer in charge of dorm R6, where the plaintiff was a detainee.  On that day, the plaintiff behaved in an aggressive manner, including posturing in an aggressive stances, wrapping his arm in a sheet, and telling CO Gensler to "his people" and "the dogs."  Gensler radioed for assistance, and the disruption ultimately involved ten additional security staff, including defendant Gregory Bacon and former Captain Anderson, and resulted in the evacuation of the R6 dorm residents to other areas.  Bacon was taken away by paramedics for chest pains after the disruption caused by the plaintiff.

The plaintiff avers that he was at his breaking point and broke. Gensler began to yell at the plaintiff, and the plaintiff just snapped. Once Gensler called for back up and the K-9 unit, the plaintiff wrapped his arms in blue blankets so the dogs wouldn't bite his arms. The plaintiff was afraid and just could not tolerate any more. He was shaking, crying, tearful, hyperventilating, and scared.

As the officer in charge, CO Gensler authored and issued an "Incident Report" and "Rules Violation Report" regarding the plaintiff's behavior incident on that date. Gensler did not receive directions or orders from defendant Bacon to issue a "Rules Violation Report." Gensler did not receive directions or orders from any superior not to issue a "Rules Violation Report." The "Rules Violation Report" is entirely in CO Gensler's handwriting and includes a notation that Bacon was notified. No supervisor signed off on the "Rules Violation Report," though the form contains a space for that purpose.

Bacon was not involved in the process regarding the rule violation report. Bacon did not participate in the April 27, 2010, "Findings" issued by Hearing Office Captain Melissa Elliott. Nor did he sustain the rules violation or impose the twenty-five days of disciplinary sanctions imposed by Captain Elliott.

On April 22, 2010, Captain Anderson made the supervisory decision to transfer the plaintiff to the downtown jail based on the plaintiff's behavior and threats towards staff, and because MCCF-S lacks a cellblock to house inmates at that level of discipline. A psychiatric evaluation also contributed to the decision.

After the incident, but before transport to the downtown jail, the plaintiff was seen in the booking area by psychiatric registered nurse Katrhryn Doperalski. Nurse Doperalski notified the

7

psychiatric social worker at the downtown jail that the plaintiff was en route. She also told the social worker that the plaintiff was not being sent to the downtown jail as discipline but rather secondary to the (11) status.

On June 6, 2010, as part of a plea agreement, the plaintiff pled guilty to battery and false imprisonment, and the State agreed to dismiss the disorderly conduct charge and to refrain from issuing any charges of intimidation of a victim/witness based on the jail telephone calls. On the same day, the circuit court entered an order rescinding its order of April 22, 2010, related to the jail telephone, visitation, and mail privileges.

On September 16, 2010, the state court entered a judgment of conviction. On September 27, 2010, the state court entered an order denying the plaintiff's motion for post-conviction relief. On July 7, 2012, the plaintiff filed a notice of appeal from the judgment of conviction and from the order denying post-conviction relief.

The Wisconsin Court of Appeals issued a decision on May 7, 2013, affirming the judgment and order. State of Wisconsin v. De Jesus, 2012 AP 1576-CR (Wis. App. May 7, 2013). Some of the arguments overlap with the plaintiff's claims here. The court of appeals found that, although the plaintiff argued that his plea was involuntarily entered because he was under extreme stress due to the fact that he had been placed in segregation, the circuit court had engaged in an in-depth colloquy with plaintiff and the record supported the voluntariness of the plea because the plaintiff did not in any way indicate that he was entering the plea under duress. Id. at ¶5. The court also found that the plaintiff's lawyers were not ineffective because they failed to produce him for the hearing at which his phone, mail, and visitation privileges were restricted or because they did not challenge the circuit court's order rescinding his phone and mail privileges. Id. at ¶¶8-9. The court concluded that the

8

statutes do not require that a prisoner be produced for a hearing on a motion to rescind jail privileges, see Wis. Stat. § 971.04, and that the plaintiff had no basis for challenging the circuit court's order restricting his privileges. Id. The plaintiff filed a Petition for Review with the Supreme Court on July 16, 2013, that has not been decided yet.

### 3. Analysis

The plaintiff, Jamie F. DeJesus, is proceeding pro se on the following claims under 42 U.S.C. § 1983: (1) Fourteenth Amendment claims against Odom regarding Odom's request to have the plaintiff's communications restricted without a court order; (2) a Fourteenth Amendment claim that defendant Mary Cook facilitated the plaintiff's transfer to segregation without a court order or due process and her failure to remove him after a grace period to secure a court order had expired; and (3) a First Amendment retaliation claim against defendant Gregory Bacon that his actions with regard to the April 22, 2010, rules violation report were in retaliation for the numerous grievances the plaintiff filed between April 9 and April 20. The plaintiff also had a claim against Odom regarding his action or inaction that resulted in the plaintiff's not being present at a hearing on April 22, 2010, but the plaintiff has decided not to pursue that claim any further.

The plaintiff submits that he is entitled to summary judgment because his constitutional rights were violated. Each of the defendants have moved for summary judgment on the plaintiff's claims against them.

As an initial matter, the court notes that the plaintiff objects to some of the evidence submitted by the defendants in support of their motions for summary judgment because he says the evidence was not produced to him in discovery. The plaintiff has not brought a separate motion to compel. Nor does he suggest that he sought the materials in discovery and the defendants failed to

9

produce them in response to his discovery requests. Rather, he seems to be arguing that the defendants should have produced their affidavits in discovery, as well as all documents related to the plaintiff's claims, even if he did not request them. First, the affidavits likely were prepared specifically in support of the defendants' motion for summary judgment, after discovery was closed. Second, in criminal cases, the prosecution has a duty to disclose evidence that is material and exculpatory. See Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); State v. Schaefer, 308 Wis. 2d 279, 292, 746 N.W.2d 457 (Wis. 2008); Wis. Stat. § 971.23. That is not the case with civil discovery. There are some disclosures required by Federal Rule of Civil Procedure 26(a). Other than those disclosures, the parties must use the tools that the Federal Rules of Civil Procedure provide to obtain information and documents. Evidence is not excluded in civil cases simply because it was not produced in discovery.

Additionally, to the extent the plaintiff references being fed nutriloaf once he was transferred back to the Milwaukee County Jail on April 22, 2010, that is outside the scope of this case.

### a. Due Process

The plaintiff was allowed to proceed on Fourteenth Amendment due process claims against Dax Odom and Mary Cook. Cook argues that she is entitled to summary judgment because the plaintiff's transfer was not punitive, but administrative, and avers that the plaintiff was moved to avoid obstruction of justice. Cook further argues that the plaintiff had no liberty interest in remaining in the general population and that the conditions were not harsh and only lasted for eight days without a court order. Odom argues that he is entitled to summary judgment because he did not request that the plaintiff's privileges be restricted or that he be transferred to segregation.

During the relevant time, the plaintiff was a pretrial detainee. "The scope of an individual's right to be free from punishment . . . hinges in his status within the criminal justice system." Lewis v. Downey, 581 F.3d 467, 473 (7th Cir. 2009). Pretrial detainees have not been convicted or sentenced yet and may not be punished by the state in any way. Id. "A pretrial detainee cannot be placed in segregation as a punishment for a disciplinary infraction without notice and an opportunity to be heard." Higgs v. Carver, 286 F.3d 437, 438 (7th Cir. 2002). "But no process is required if he is placed in segregation not as punishment but for managerial reasons." Id.

The plaintiff did not have a due process hearing at the jail before he was transferred to R6. That is undisputed. However, to establish a right to due process, a pretrial detainee must demonstrate either (1) an "expressed intent to punish on the part of detention facility officials" or (2) that the challenged condition or restriction lacked a reasonable relationship to a legitimate, non-punitive administrative purpose. Bell v. Wolfish, 441 U.S. 520, 538-39 (1979); see also Love v. Kirk, 360 Fed.Appx. 651, 653 (7th Cir. 2010). The plaintiff has presented no evidence to contradict the defendants' sworn affidavits that the plaintiff's placement in R6 was nonpunitive and done to avoid the obstruction of justice.

"Absent proof of any jail officials' express intent to punish him, [the plaintiff's] only alternative under Bell, then, depends on his ability to establish that his segregation was either arbitrary or not reasonably related to a legitimate, non-punitive administrative purpose." Love, 360 Fed.Appx. at 654. The plaintiff's argument is that placement in segregation without due process is per se punishment. But the only evidence in the record shows that the placement was reasonably related to the legitimate, non-punitive administrative purpose of preventing the obstruction of justice. Although the plaintiff argues that the restrictions on his communication could have been achieved

11

in general population, "wide-ranging deference" must be given to the decisions of jail administrators. Hudson v. McMillian, 503 U.S. 1, 6 (1992). Prisons are accorded great deference in the areas of internal order and security. Azeez v. Fairman, 795 F.2d 1296, 1298 (7th Cir. 1986). This court must defer to the determination by the staff at MCCF-S, whether Cook or Anderson, that they could not monitor or control the plaintiff's communications in the general population and that a transfer to R6 would avoid the risk of the plaintiff continuing to obstruct justice while incarcerated. Accordingly, Cook is entitled to summary judgment on this claim, and the plaintiff's motion for summary judgment regarding Cook will be denied.

With regard to Odom, the plaintiff emphasizes that Odom requested WITSEC monitoring on a hunch and notes that Michelle A. visited him at MCCF-S. The plaintiff argues that Odom's call to MCCF-S was conduct forbidden a district attorney in a pending criminal matter and suggests that Odom crossed a bright line of the plaintiff's constitutional rights. Yet the plaintiff points to no authority defining this bright line. The cases the plaintiff cites relate to whether a prosecutor is entitled to absolute immunity for a particular function.

Where a prosecutor acts in a quasi-judicial capacity, he is entitled to absolute immunity for damages. Buckley v. Fitzsimmons, 509 U.S. 259 (1993). However, when the prosecutor's conduct is administrative or investigatory, he is entitled only to qualified immunity. Id. The line is blurred between Odom's investigation of possible illegal activity and his prosecution of the plaintiff's original case and possible intimidation of witness charges. As a result, the court concludes that Odom is not entitled to absolute prosecutorial immunity under the attendant circumstances.

According to Odom, he simply advised the Sheriff's Department of plaintiff's activity and the potential forthcoming court order and/or criminal charges. Odom acknowledges that he did not

12

have the authority to tell the Sheriff's Department what to do. It was up to the individuals at MCCF-S to decide what action to take based on the information Odom provided. It was up to those responsible for the plaintiff's custody to determine whether they would take action to prevent the plaintiff from committing further crimes before a court order was entered.

In fact, it might have been irresponsible for Odom not to advise the Sheriff's Department about his investigation and his intention to file a motion rescinding the plaintiff's communication privileges and possibly bring new criminal charges. The record also reflects that the twenty-two day delay between Odom's call to MCCF-S and the hearing on the motion to rescind communications was due to the unavailability of the plaintiff's criminal defense counsel.

While conduct such as Odom's can be deemed investigative and strip him of absolute prosecutorial immunity, the communications did not violation the plaintiff's constitutional rights. Odom did not cross any line in sharing the information and, even if he did, it was not his decision to transfer the plaintiff to R6. Accordingly, the court will grant Odom's motion for summary judgment and deny the plaintiff's motion for summary judgment.

The plaintiff also makes argument regarding the Sheriff's Department adherence to their own internal policies and procedures. However, violations of policies and procedures does not implicate the plaintiff's constitutional rights. Scott v Edinburg, 346 F.3d 752, 760 (7th Cir. 2003) ("42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices.").

### b. Retaliation

With regard to the plaintiff's First Amendment retaliation claim against defendant Gregory Bacon, the plaintiff argues that Bacon retaliated against him by issuing a rules violation report that

13

he knew would subject the plaintiff to additional punishment upon his transfer to the downtown jail and that he superseded the orders of Nurse Doperalski, his immediate supervisor Captain Susan Anderson, and his fellow Lieutenant, Ross Stein to do so. This is not borne out by the facts in the record.

Bacon was not even aware of the plaintiff until April 22, 2010, when he responded to a disturbance involving the plaintiff. Bacon then was taken away by paramedics after the incident and did not have any involvement in the preparation of the rules violation report or subsequent disciplinary procedures.

The plaintiff has only his unsubstantiated allegations that Bacon knew about his grievances or somehow participated in the rules violation report, even though Bacon did not write or sign the report and was taken away by paramedics after the incident. The plaintiff has offered no evidence to rebut Bacon's affidavit that he was not involved in any rules violation report and was not aware of the plaintiff until he responded to the incident on April 22, 2010. Anything the plaintiff has argued to the contrary is simply conjecture. Accordingly, there is no evidence in the record that Bacon was personally involved in the alleged deprivation of the plaintiff's constitutional rights. See Burks v. Raemisch, 555 F.3d 592, 596 (7th Cir.2009) (Section 1983 makes public employees liable "for their own misdeeds but not for anyone else's."). With regarding to the plaintiff's claim against Bacon, the court will deny the plaintiff's motion for summary judgment and grant defendant Bacon's motion for summary judgment.

### 4. Plaintiff's Motion to Stay

The plaintiff recently filed a motion to stay this case after the resolution of the motions for summary judgment. He has been transferred to the Wisconsin Resource Center to undergo intensive

14

mental health treatment and will be unable to prosecute this case while he is in treatment. The resolution of the parties motions for summary judgment renders this request moot.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the plaintiff's motion for summary judgment (Docket No. 53) be and hereby is **DENIED**.

**IT IS FURTHER ORDERED** that defendant Dax Odom's motion for summary judgment (Docket No. 59) be and hereby is **GRANTED**.

**IT IS FURTHER ORDERED** that the motion for summary judgment by defendants Gregory Bacon and Mary Cook (Docket No. 71) be and hereby is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion to stay (Docket No. 107) be and hereby is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment dismissing this case.

Dated at Milwaukee, Wisconsin this 27th day of September, 2013.

BY THE COURT:

s/ Aaron E. Goodstein
AARON E. GOODSTEIN
United States Magistrate Judge